724 F. Supp. 974

AVESTA AB AND AVESTA STAINLESS, INC., PLAINTIFFS v. UNITED STATES, DEFENDANT, AND ALLEGHENY LUDLUM STEEL CORP., ARMCO INC., JESSOP STEEL CORP., J & L SPECIALTY PRODUCTS CORP., WASHINGTON STEEL CORP. AND UNITED STEELWORKERS OF AMERICA, AFL/CIO–CLC, DEFENDANT-INTERVENORS

Court No. 87–07–00799

(Dated October 27, 1989)

*Freeman, Wasserman & Schneider (Jack Gumpert Wasserman, Patrick C. Reed)* for plaintiffs.

*Lyn M. Schlitt*, General Counsel, *James A. Toupin*, Assistant General Counsel, Office of the General Counsel, United States International Trade Commission (*Jack M. Simmons, III*) for the defendant.

*Collier, Shannon, Rill & Scott (David A. Hartquist, Paul C. Rosenthal, Patrick B. Fazzone)* for the defendant-intervenors.

OPINION

CARMAN, *Judge:* Plaintiffs seek review of the determination of the United States International Trade Commission (hereinafter Commission or ITC) not to institute an investigation under section 751(b) of the Tariff Act of 1930 (19 U.S.C. § 1675(b) (1982 & Supp. V

1987)) to determine whether an industry in the United States would be materially injured, threatened with material injury or whether the establishment of an industry in the United States would be materially retarded by reason of dumped imports of stainless steel plate from Sweden if the outstanding antidumping duty order on that merchandise were modified or revoked. 52 Fed. Reg. 24,541 (1987).

## BACKGROUND

On May 1, 1973, the United States Tariff Commission (now known as the International Trade Commission) determined that an industry in the United States was materially injured by reasons of imports of stainless steel plate from Sweden which the Secretary of the Treasury had determined to be sold at less than fair value. *Stainless Steel Plate from Sweden,* TC Pub. No. 573, Inv. No. AA1921–114 (1973). On June 5, 1973 the Department of Treasury issued a finding of dumping (T.D. 73–157) and notice was filed in the Federal Register. 38 Fed. Reg. 15,079 (1973).

On July 8, 1985, plaintiffs Avesta AB and Avesta Stainless, Inc. filed their first request pursuant to section 751(b) of the Tariff Act of 1930 with the ITC to review the Commission's affirmative decision in investigation number AA1921–114. The Commission determined that plaintiffs' petition did not show changed circumstances sufficient to warrant a review of the investigation. 50 Fed. Reg. 43,613 (1985). Plaintiff brought an action in this Court seeking an order invalidating and vacating the Commission's determination. Plaintiffs' motion was denied and the determination was sustained. *Avesta AB* v. *United States,* 12 CIT 493, 689 F. Supp. 1173 (1988) (hereinafter *Avesta I*).

On February 25, 1987 plaintiffs made a second request pursuant to section 751(b) of the Tariff Act of 1930, to review the affirmative determination in the investigation. The Commission again determined pursuant to 19 U.S.C. § 1675(b) and 19 C.F.R. § 207.45 (1987) that the petition did not show changed circumstances sufficient to warrant institution of a review investigation. 52 Fed. Reg. 24,541 (1987).

Plaintiffs commenced the instant case seeking an order invalidating and vacating the Commission's determination pursuant to the second review request.

CONTENTIONS OF THE PARTIES

*Plaintiffs' Contentions:*

Plaintiffs allege that the following are changed circumstances sufficient to warrant review to the ITC's determination:[1]

(1) The 1976 acquisition by plaintiffs of the New Castle, Indiana mill resulted in the following changes:

(a) the average annual import volume and import penetration ratio decreased by more than sixty percent after the acquisition, taking into account the exclusion of three non-stainless-steel-plate products from the import statistics;

(b) total imports and imports as a percentage of apparent consumption were lower in every year after the acquisition than they were during the first year plaintiffs owned the mill, or in 1974 and 1975, the only full years before the acquisition when the finding of dumping was in effect;

(c) The import statistics show that import levels decreased significantly after plaintiffs' acquisition of the Indiana mill. Plaintiffs contend that this result was independent of the finding of dumping and that the current import levels are *de minimis*; and

(d) Plaintiffs have made changes in import behavior such as decreasing their imports significantly after acquiring the Indiana mill and changing their product mix by discontinuing their imports of hot-rolled plates of standard stainless steel grades;

(2) The quantity of imports of three non-stainless-steel-plate products are set forth in the review request and their exclusion is requested from the import statistics;

(3) The voluntary restraint agreements (hereinafter VRAs) that have been established since the filing of the first review request resulted in the following changes:

(a) plaintiffs are now placed at a competitive disadvantage in pricing as compared to imports from VRA countries; and

---

[1]At oral argument parties were given the opportunity to submit briefs distinguishing *Avesta I* from the instant case since *Avesta I* was decided after the parties had submitted their briefs for the instant case. The parties also submitted summaries of contested agency findings and a statement of reasons underlying those findings. The alleged changed circumstances listed in the text are based upon those originally included in plaintiffs' petition and information from the additional briefs. The eight alleged changed circumstances set out in plaintiffs' review petition were:

(1) In a series of corporate consolidations in Sweden, the stainless steel plate industry has shrunk from four producers in 1972 to a single producer in 1987, with a consistently decreasing capacity to produce stainless steel products;

(2) Imports of hot-rolled stainless steel plate from Sweden have been and remain at *de minimis* levels;

(3) The *de minimis* levels of imports from Sweden result from the 1976 acquisition by plaintiffs of a hot-rolling plate producing mill in New Castle, Indiana;

(4) In contrast to the early 1970s, the European Community is a growing market for Swedish plate and Swedish plate enters the European Community without quantitative restrictions and duty-free;

(5) United States producers are highly protected due to the negotiation and implementation of voluntary restraint agreements with countries whose producers are the major foreign suppliers to the United States market;

(6) Sweden has not entered into a voluntary restraint agreement with the United States therefore its exports to the United States remain subject to antidumping and countervailing duties, while those from countries with voluntary restraint agreements are not;

(7) Sweden supplies the United States' demand for cold-rolled plate in widths which United States firms are unable to supply; and

(8) Certain patented types of stainless steel plate that did not exist in the 1970s and are not produced in the United States are being exported from Sweden to the United States.

Petition for Review Investigation and Revocation or Modification of "Finding of Dumping" Against Stainless Steel Plate From Sweden Issued on June 7, 1973, Record Document (hereinafter R. Doc.) 1 (hereinafter Petition for Review) at 4–7.

(b) the VRA program has contributed to an improvement in the condition of the United States industry, thereby decreasing the likelihood that the industry would suffer material injury in the event of revocation;

(4) Swedish exports of hot- and cold-rolled stainless steel plate to European Community (hereinafter EC) member-countries increased by over 250 percent from 1971 to 1985. The second review request contains a data series which lists exports of hot- and cold-rolled stainless steel plate from Sweden to the EC from 1971 through the first nine months of 1986;

(5) In 1986, plaintiffs began exporting cold-rolled plate to the United States. Therefore exports of cold-rolled plate to the European Community are no longer irrelevant to the ITC's determination;

(6) The second review request asked the Commission to institute an investigation to determine whether the finding of dumping should be modified to exclude future imports of two patented products and the wide KBR Plate which the Review Request shows to be the only continuously-made cold-rolled stainless steel plate in widths of sixty inches or more; and

(7) In a series of corporate consolidations in Sweden, the stainless steel plate industry has shrunk from four producers in 1972 to a single producer in 1987, with a consistently decreasing capacity to produce stainless steel products.

### Defendant's and Defendant-Intervenors' Contentions:

Defendant and defendant-intervenors contend that the determination of the Commission was not arbitrary, capricious or an abuse of discretion and was in accordance with law and therefore should be upheld in all respects.[2]

### STANDARD OF REVIEW

The Commission has determined that plaintiffs' review request "d[id] not show changed circumstances sufficient to warrant institution of a review investigation." Views of Commissioners Alfred Eckes, Seeley Lodwick, and David Rohr, R. Doc. 17 (hereinafter Views of Commissioners) at 7. In *Avesta I,* this Court stated that "the standard applicable in a preliminary injury determination under § 1673(b) is different from the standard governing a determination of changed circumstances sufficient to warrant review of an affirmative injury determination." 12 CIT at 494, 689 F. Supp. at 1175. This Court noted:

[W]hile the decision to undertake a review is a threshold question, this decision, pursuant to statute and regulations, may be made only when it reasonably appears that positive evidence adduced by the petitioner together with other evidence gathered by the Commission leads the ITC to believe that there are

---

[2]Since defendant and defendant-intervenors filed joint briefs, the term defendant is used throughout to refer to both parties.

changed circumstances sufficient to warrant review* * *. [T]he party seeking revocation bears the initial burden of showing the existence of such [changed] circumstances. The party need not establish that the crucial factors that lead to the ITC's affirmative injury determination no longer exist since the application of such a burden would eliminate the need for a review investigation once the decision to undertake one has been made.

12 CIT at 501, 689 F. Supp. at 1181 (footnote omitted).

Plaintiffs contend that the ITC's determination does not set forth any standard of law and that defendant's brief argues that (1) the Commission has uncircumscribed discretion to decide whether changed circumstances are sufficient to warrant a review and (2) the petitioner must sustain the same full burden of proof in the threshold changed circumstances determination and the ultimate revocation determination.

Defendant denies that either the Commission or its counsel has ever asserted that the ITC has "uncircumscribed discretion" or that a petitioner must bear the same burden in the instituting stage as in the actual investigation.

The standard of review of a decision not to institute a section 751(b) investigation is whether the determination is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. §§ 1516a(a)(1)(B), 1516a(b)(1)(A) (1982 & Supp. V 1987). This standard of review "is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n* v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1982) (citing *Burlington Truck Lines, Inc.* v. *United States*, 371 U.S. 156, 168 (1962)).

Plaintiffs specifically contend that (1) the three majority commissioners failed to apply the correct legal standard and failed to articulate.any applicable legal standard and (2) the findings by the three majority commissioners are contradicted by the administrative record and lack rational basis in fact.

NEW CASTLE MILL ACQUISITION

*Average Annual Import Volume and Import Penetration Level:*

Plaintiffs contend that the average annual import volume and import penetration ratio decreased by more than sixty percent after the acquisition of the mill, taking into account the exclusion of three non-stainless-steel-plate products from import statistics. Defendant responds that the same substantive argument was made in *Avesta I* and rejected by this Court. In *Avesta I*, the following argument was made:

Plaintiffs argue that the decrease in imports from Sweden is not a result of import relief but is a result of the other alleged changed circumstances, particularly the acquisition of the New Castle steel mill by a predecessor of Avesta. Plaintiffs assert that from 1976 (the year in which the New Castle Mill was acquired) through 1984, average annual imports have been 940 net tons. This level, plaintiffs contend, is less than 60% of the average level in the two years immediately preceding the acquisition. Plaintiffs further dispute the ITC's conclusion that imports of Swedish plate have remained relatively constant since the imposition of the antidumping duty order.

12 CIT at 504, 689 F. Supp. 1183.

This Court agrees that plaintiffs' current claim, in substance, is the argument that was rejected in *Avesta I*, and finds the argument to be no more persuasive now than it was in the past. This Court finds that plaintiffs have not offered sufficient reasoning to show that the decline in imports was the result of anything other than import relief. This Court holds that the ITC's determination that the average annual import volume and the import penetration level did not constitute changed circumstances sufficient to warrant review was not arbitrary, capricious or an abuse of discretion and was in accordance with law.

*Decrease in Import Levels:*

Plaintiffs contend that import levels have decreased due to the acquisition of the mill. Specifically, plaintiffs claim that (1) total imports and imports as a percentage of apparent consumption were lower every year after the acquisition and (2) the decrease was independent of the finding of dumping and current import levels are *de minimis.* These issues are closely related to the argument quoted above. In their determination the Commissioners stated:

A decline in exports is an expected result from the imposition of an order. Moreover, plate imports, including those from Sweden, have been subject to quotas and additional duties during portions of the years since 1973 including, for example special duties imposed pursuant to section 202 of the Trade Act of 1974. The current allegation is not in any significant respect different from the allegation rejected by the Commission in 1985. The Commission again finds that petitioners have offered no legally sufficient reason why the current levels of plate imports are the result of anything other than import relief.

Views of Commissioners at 4 (footnote omitted).

This Court agrees that there is ample evidence in the record for the Commission to come to the rational conclusion that the decline in import levels is related to the imposition of the antidumping order. This Court finds that the Commission's determination that the decrease in import levels did not constitute a changed circumstance

sufficient to warrant review was not arbitrary, capricious or an abuse of discretion and was in accordance with law.

*Changes in Import Behavior:*

Plaintiffs claim that they have made changes such as decreasing their imports significantly, eliminating imports of hot-rolled plate sold in the United States market and reducing their production capacity for stainless steel plate all as a result of the acquisition of the Indiana mill.

Plaintiffs alleged in their post-argument brief that a change in the structure of the Swedish industry has also led to a change in the mix of imported plate. Defendant notes that this allegation was not made in plaintiffs' petition before the Commission. Defendant also points out that this change in product mix was linked to the purchase of the Indiana mill, but was not linked to the restructuring of the Swedish steel industry.

The Commissioners stated in their determination:

> Unlike their 1985 petition, petitioners now assert that acquisition of the mill caused a substantial shift in their market strategy and that the New Castle mill used to supply the majority of petitioners' hot-rolled plate for the U.S. market. They state that they intend to use the U.S. facility for hot-rolled plate except for specialty types. Their data, however, show that exports of Swedish plate to the U.S. are predominantly hot-rolled, including a very substantial percentage of standard types. We conclude that [sic] the Swedish producers have offered no additional argument to support their assertion that exporters have significantly altered their long-term practices with regard to exports of plate to the United States.

Views of Commissioners at 4–5.

Defendant notes that data included in plaintiffs' petition for review investigation indicates significant imports of hot-rolled steel. Petition for Review at 34–36.

This Court is not convinced that plaintiffs' import behavior has changed substantially. This Court determined in *Avesta I* that the purchase of the Indiana mill did not constitute a changed circumstance and plaintiffs have not provided sufficient reasoning to decide the issue differently at this time. This Court holds that the Commission's determination that the acquisition of the Indiana mill leading to changes in import behavior does not constitute a changed circumstances sufficient to warrant review was not arbitrary, capricious or an abuse of discretion and was in accordance with law.

### EXCLUSION OF THREE NON-STAINLESS STEEL PRODUCTS

Plaintiffs have requested the exclusion of what they claim are three non-stainless-steel-plate products (Stavex, Ramex and Type 904L) from the import statistics. They contend that the Commission failed to explain whether the three products were included or excluded in the antidumping order. Plaintiffs also contend that the

compositions of Stavex and Ramex were derived from tool steel compositions and therefore do not fall into the category of standard grades of stainless steel products.

Defendant argues that (1) the fact that Stavex and Ramex were derived from tool steel does not mean they are not stainless steel plate; (2) plaintiffs did not define standard grades of stainless steel; (3) plaintiffs did not allege that the chemical composition of the two products differs from that of stainless steel and, in fact, the chemical composition of the two products falls within the difinition of stainless steel in the tariff schedule; (4) by plaintiffs' description, the two products appeared to be interchangeable in many uses with stainless steel; and (5) the two products have been treated as plate in the tariff schedule and in other official United States statistics and plaintiffs have not alleged that the two products have been misclassified.

Defendant also points out that the Commission acknowledges that Type 904L should be deducted from the import statistics because it is not emcompassed within the antidumping order at issue. However, defendant adds that the volume of Type 904L imports was very small.

This Court agrees that Type 904L should be deducted from the import statistics since it is not covered by the antidumping order. Since Type 904L was imported in such small quantity, it would not appear to have affected the general trend of plaintiffs' import statistics for purposes of this review. On the basis of ample evidence in the record detailing the properties of Stavex and Ramex, the Commission's decision to include these two products within the import statistics and to implicitly include Stavex and Ramex in the antidumping order was not arbitrary, capricious or an abuse of discretion and was in accordance with law.

## VOLUNTARY RESTRAINT AGREEMENTS

Plaintiffs contend that they have been placed at a competitive disadvantage in pricing due to VRAs in the steel industry. These VRAs were not in effect at the time *Avesta I* was decided and the United States does not have a VRA with Sweden. Plaintiffs argue that since VRAs are in effect between the United States and almost all of the major steel exporting countries, the United States has insulated itself from competition, exempted VRA countries from the antidumping and countervailing duty laws and eliminated these countries from escape clause duties (19 U.S.C. § 2251 (1982 & Supp. V 1987)). Plaintiffs further contend that the VRA program has contributed to an improvement in the condition of the United States steel industry, decreasing the likelihood that it would suffer material injury in the event of revocation of the antidumping order.

The Commissioners determined two flaws in plaintiffs' argument:

First, because there is no VRA in effect with Sweden, the Swedish producer may continue to export to the United States in whatever quantities it chooses. Second, the existence of the VRAs does not mean that the U.S. stainless steel industry is any less vulnerable to the impact of dumped imports.

Views of Commissioners at 6–7 (footnote omitted).

Defendant argues that plaintiffs do not address the relevant issues at hand, namely the condition of the domestic industry and the effect of the subject imports on that industry. Defendant notes that "[f]or purposes of investigations under section 751(b), the ITC must assume that dumping will resume if the antidumping duty order is revoked or cancelled." *American Permac, Inc.* v. *United States,* 831 F.2d 269, 274 (Fed. Cir. 1987), *cert. dismissed,* 108 S. Ct. 1067 (1988). Defendant contends that plaintiffs have given no indication that they have eliminated the existing material injury or vulnerability to injury and have failed to show that the VRAs have changed the domestic industry or its vulnerability to material injury.

This Court agrees that plaintiffs have not shown any change in their effect on the domestic industry that could be attributed to the VRAs. The fact that the United States chose to enter into agreements with several other steel producers does not lessen the danger of dumping by plaintiffs although arguably injury may be lessened. Defendant cites *Certain Welded Carbon Steel Pipes and Tubes From India, Taiwan, and Turkey,* USITC Pub. No. 1839 (1986), as an example of an instance where materiel injury was found when VRAs were in effect. Furthermore, arguing that other countries have entered into VRAs with the United States and that these agreements have benefitted the domestic industry seems to have little force in justifying giving relief to plaintiffs which have already been found to be engaged in dumping simply because Sweden has chosen not to enter into a similar VRA.

This Court finds that the Commission's determination that VRAs did not constitute changed circumstance sufficient to warrant investigation of a review determination was not arbitrary, capricious, or an abuse of discretion and was in accordance with law.

### SWEDISH EXPORTS OF HOT- AND COLD-ROLLED STEEL TO EC

Plaintiffs contend that Swedish exports of hot- and cold-rolled stainless steel plate to EC countries have increased by over 250 percent from 1971 to 1985 due to (1) the recovery from the recession of the early 1970s; (2) the elimination of tariffs and import quotas pursuant to the free-trade agreement between Sweden and the EC; and (3) the increase in the number of EC member-countries importing Swedish steel duty-free.

The Commissioners stated:

Petitioners further allege, as they did in 1985, that the European market is a growing market for its plate exports. Although petitioners here rely on a different data series for this

proposition from that on which they relied in 1985, their current data fail to take into account the change in E.C. membership since 1972. When that change is accounted for, Swedish shipments to the E.C. fell irregularly from 1973 to 1981 and then increased irregularly through 1985. In 1985, Swedish exports to the E.C. were just five percent higher than in 1972. Thus, the Commission again finds that there is no sufficient changed circumstance with regard to this allegation.

Views of Commissioners at 6.

Plaintiffs contend that their second review request contained a data series which presented exports of hot- and cold-rolled steel plate from Sweden to the EC from 1971 through the first nine months of 1986. This data series differs from the one provided in the first review request pertaining to *Avesta I.* Defendant argues that the data series from the second request did not have a constant base.

A review of the data series from the second request shows that prior to 1974, the data included imports by only West Germany, France, Italy, the Netherlands, Belgium and Luxembourg. In 1974 through 1980 the data included those six countries plus the United Kingdom, Ireland and Denmark. In 1981, the data included the above nine countries plus Greece and the 1986 data did not include Spain and Portugal. Petition for Review at 60 (Table 5).

Given the lack of a constant base, this Court finds that the Commission's determination that plaintiffs' sales to the E.C. did not constitute a changed circumstance sufficient to warrant review was not arbitrary, capricious, or an abuse of discretion and was in accordance with law.

### COLD-ROLLED PLATE EXPORTED TO UNITED STATES

Plaintiffs began exporting cold-rolled plate to the United States in 1986 and contend that exports of this merchandise to the EC are no longer irrelevant to the Commission's determination. In *Avesta I,* this Court noted that data regarding cold-rolled plate exports were irrelevant since plaintiffs were not exporting this merchandise to the United States at the time. *Avesta I* at 1186. Plaintiffs contend that the Commission should not rely on data which excluded cold-rolled plate.

Plaintiffs' contention here is an extension of the argument to have the ITC substitute plaintiffs' data series for the data used by the Commission. By plaintiffs' own admission, very little cold-rolled plate is sold in the United States market. Brief in Support of Plaintiffs' Motion for Judgment upon an Agency Record at 52 n.89. While plaintiffs discussed the exporting of cold-rolled plate to the United States in its review request, the issue of missing data on cold-rolled plate was not introduced until post-argument briefs and this issue was placed in the context of showing the ITC's data to be

unreliable. Introducing plaintiffs' data series, as explained *supra* would present an unrealistic picture of the steel plate market.

This Court finds that the ITC's determination that data excluding cold-rolled steel did not constitute a changed circumstance sufficient to warrant review was not arbitrary, capricious or an abuse of discretion and was in accordance with law.

### EXCLUSION OF PATENTED PRODUCTS AND KBR PLATE

In their review request, plaintiffs asked the Commission to institute an investigation to determine whether the finding of dumping should be modified to exclude future imports of two patented products and KBR plate. Plaintiffs contend that the Commissioners did not address their request and did not explain whether the request was considered for the purpose of modification of the antidumping order or as an issue in the possible revocation of the entire order.

The Commissioners stated:

> Simply because a new composition or size is produced—and even patented—does not make it sufficiently different in its characteristics and uses from other types of stainless steel plate to warrant a finding that there is no domestic like product. The Commission has regularly rejected arguments that specialty types of stainless steel should be treated differently from standard types in making like product determinations. In fact, in recently concluded investigation [sic], the Commission did not accept Avesta's argument that these two patented types of stainless steel are not competitive with domestically produced types of stainless steel.

Views of Commissioners at 5–6 (footnotes omitted).

Plaintiffs assert that since their two patented products were excluded from escape clause duties under 19 U.S.C. § 2251 (section 201 of the Trade Act of 1974) in 1981, these products were not competitive with United States plate. Plaintiffs also contend that in the 1987 investigation regarding escape clause duties, a majority of the Commissioners recommended termination of import relief for all of plaintiffs' plate products.

Defendant responds that the test under section 201 is whether there is injury to a United States "industry producing an article like or directly competitive with the imported article" while, under the antidumping law, the Commission must determine whether there is injury to an industry producing an article that is "like, or in the absence of like, most similar in characteristics and uses with" the imported product. 19 U.S.C. §§ 2251(b)(1) and 1677(10) (1982). Defendant argues, therefore, that being exempt from section 201 duties does not mean that plaintiffs' merchandise does not compete with domestic plate nor does it mean that plaintiffs' merchandise is not injurious to the domestic industry.

Although plaintiffs never made a formal request, their argument could best be described as proposing that the two patented products plus KBR plate are separate like products from standard stainless steel plate. Plaintiffs contend that KBR is the only continuously made cold-rolled stainless steel plate in widths of sixth inches or more. KBR is eighty inch wide plate. Defendant replies that there is a seventy-two inch wide plate which is comparable to KBR. Defendant also contends that simply patenting merchandise does not make it different in a commercial sense.

The ITC has continuously held that merchandise generally sharing the same characteristics and uses are like products. In *Certain Flat-Rolled Carbon Steel Products From Brazil*, USITC Pub. No. 1499 at 6 (1984) the Commission held that coiled steel plate and cut-to-length steel plate constituted carbon steel plate, a like product because all have essentially the same characteristics, uses, metallurgical composition, are virtually interchangeable and have almost identical end uses. In the instant case, plaintiffs did not convince the ITC that their three products possessed qualities which would make them a separate like product. Defendant contends that KBR is interchangeable with the seventy-two inch plate. Plaintiffs argue that KBR has unique properties such as a more shiny surface finish, closer dimensional tolerance, more uniform mechanical properties, and greater width, but does not argue that end uses or metallurgical composition differs from standard plate. The Commissioners noted that "plate may be produced in an almost infinite variety of compositions and sizes, depending upon the components chosen, the ratios in which they are used, and the individual production machine and steps employed." Views of Commissioners at 5.

This Court holds that the Commission's determination that KBR and the two patented products do not constitute a separate like product was not arbitrary, capricious or an abuse of discretion and was in accordance with law.

## CORPORATE CONSOLIDATION IN SWEDEN

Plaintiffs argue that the shrinking of the stainless steel plate industry from four producers in 1972 to one single producer, plaintiffs, in 1987 and the consistently shrinking capacity to produce stainless steel products constitutes a changed circumstance. The Commission noted that:

> petitioners allege, as they did in 1985, that there has been a restructuring of the Swedish stainless steel industry after 1972, in which the number of Swedish producers had declined from four to one. They also allege, as they did in 1985, that there was a decrease in the number of steel mills during the same period. In 1985, the Commission found these allegations insufficient. It is currently alleged, *inter alia*, that since 1984, capacity to produce hot-rolled plate has declined. However, notwithstanding the decreases in absolute capacity, there remains sufficient un-

used productive capacity to significantly increase exports to the United States without decreasing production for the Swedish market or for other export markets.

Views of Commissioners at 7.

Plaintiffs contend that the Commissioners ignored the significance of the corporate consolidations and claim that the existence of unused capacity is only one of many factors which should have been weighed against other factors in the full investigation such as plaintiffs' overall reduction in production capacity which would decrease the likelihood of injury to the domestic industry if the antidumping order were revoked. Plaintiffs add that their decision to supply the United States market with plate from the Indiana mill and their intent to maintain *de minimis* imports show that they do not intend to import plate at injurious levels should the antidumping order be revoked.

Defendant argues that while there was a decrease in plaintiffs' production from 1984 to 1986, if business conditions were favorable, production could be restored to 1984 levels. Defendant dismisses plaintiffs' argument that labor costs would prohibit such a production increase since defendant contends there was no indication of any shift in labor or other production cost from 1984 to 1986 that would make the 1984 production levels less achievable based on cost. Defendant argues further that even slight increases in capacity utilization could result in large increases in export volume.

Plaintiffs claim they have made changes which would indicate their intent not to import at injurious levels. In reality their ability to increase imports still exists even though they are now the sole producer of stainless steel in Sweden. This Court finds the Commission's decision that restructuring of the Swedish stainless steel industry did not constitute a changed circumstance sufficient to warrant review was not arbitrary, capricious or an abuse of discretion and was in accordance with law.

## Conclusion

For the reasons provided above, this Court holds that the Commission's determination regarding plaintiffs' petition for review of the 1973 finding of dumping of stainless steel plate from Sweden was not arbitrary, capricious or an abuse of discretion and was in accordance with law. Accordingly, plaintiff's motion is denied and the determination is sustained.